IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

Ade Dean Adeniji,              )
                               )
         Plaintiff,            )
                               )
    v.                         )    No. 04 C 5775
                               )
Alexian Brothers Behavioral    )
Health Hospital,               )
                               )
         Defendant.

**MEMORANDUM OPINION AND ORDER**

Ade Adeniji was employed as a mental health counselor at Alexian Brothers Behavioral Health Hospital ("ABBHH") from August 4, 2003 until May 19, 2004. Adeniji is of Nigerian origin and was born on October 13, 1951.

On May 17, Adeniji put in an application to transfer to the soon-to-be vacant position of Director of Human Resources. On the morning of May 19, 2004, the Director of Human Resources at ABBHH, Scott Peterson ("Peterson"), received a phone call from ABBHH employee Jennifer Ziarko ("Ziarko") in which she complained that Adeniji had sexually harassed her. Ziarko later formalized her allegations in a complaint. Ziarko's complaint stated, *inter alia*, that Adeniji had asked her dress size in order to buy her something "attractive;" that Adeniji had repeatedly ignored her requests to leave her alone because she felt he was acting inappropriately; and that the prior evening, Adeniji had overheard her tell another

nurse that she was going to her car, waited for her in the parking lot, and after she denied his request to talk, followed her back to her unit. In her conversation with Peterson, Ziarko identified Cassaundra Brown ("Brown") as a woman whom Adeniji had also sexually harassed and identified Sherry Ogilvie ("Ogilvie") as a woman who had witnessed Adeniji's harassment.

Later that day, Peterson met with Brown. According to Peterson, Brown told him that Adeniji had repeatedly touched her arm and face despite her requests that he stop; Adeniji had repeatedly called her "baby" despite her requests to stop; and Adeniji threatened to hurt her and her significant other if she ever complained about sexual harassment.

Peterson also interviewed Ogilvie, who corroborated Ziarko's claims of harassment. According to Peterson, Ogilvie told Peterson that Adeniji would sometimes leave his unit up to five times a night to visit Ziarko; that Adeniji had told Ogilvie that "once Ziarko has had me, she would not want her boyfriend;" that Adeniji had admitted to her that Ziarko had requested he leave her alone; that Adeniji referred to Ziarko as "baby;" and that Adeniji had talked with her about his need to "discipline" women.[1]

---

[1] It is unclear whether Peterson's interview with Ogilvie occurred before or after Adeniji's termination because his notes from the interview, which may or may not have been taken contemporaneously, are dated May 21 and his affidavit does not explicitly state on what day the interview took place. For purposes of this motion, the court will assume Adeniji's termination occurred prior to the interview with Ogilvie.

2

Later on May 19th, Peterson and the Acting Director of Nursing, Patricia Getchell ("Getchell"), had a meeting with Adeniji regarding the complaints. Adeniji denied the allegations at this meeting. After consulting with Getchell, Peterson reached the decision to fire Adeniji for having sexually harassed Ziarko and Brown and for his threatening behavior toward Brown. Peterson called Adeniji that afternoon and related the news of his termination.

According to Adeniji, Peterson's stated reasons for termination were a pretext for firing Adeniji because of his national origin and age. Adeniji filed an EEOC charge on May 28, 2004 claiming his termination was motivated by discrimination based on his national origin and his age. Adeniji later filed a three count complaint against ABBHH. The claims for wrongful termination include: 1) a Title VII claim for national origin discrimination; 2) an ADEA claim for age discrimination; and 3) an ADEA claim for willful age discrimination. Defendant seeks summary judgment on all claims.

Summary judgment is appropriate where the record shows that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Lexington Ins. Co. v. Rugg & Knopp*, 165 F.3d 1087, 1090 (7th Cir. 1999); FED. R. CIV. P. 56(c). I must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable

inferences in favor of that party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). "The nonmoving party must offer something more than a 'scintilla' of evidence to overcome summary judgment . . . and must do more than 'simply show that there is some metaphysical doubt as to the material facts.'" *Roger Whitmore's Auto. Servs. v. Lake County, Ill.*, 424 F.3d 659, 667 (7th Cir. 2005) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)). I grant defendant's motion for summary judgment on all claims for the following reasons.

## II. Title VII National Origin Discrimination

Adeniji may attempt to prove his Title VII termination claim either with the direct method or the indirect method of burden shifting. *Rozskowiak v. Vill. of Arlington Heights*, 415 F.3d 608, 612 (7th Cir. 2005).

### A. Direct Method

Under the direct method, a plaintiff may offer either direct evidence of a discriminatory motive or circumstantial evidence from which an inference of a discriminatory motive can be drawn. *See Troupe v. May Dep't Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). "Direct evidence 'essentially requires an admission by the decision-maker that his actions were based upon the prohibited animus.'" *Rozskowiak*, 415 F.3d at 612. (*quoting Rogers v. City of Chicago*, 320 F.3d 748, 753 (7th Cir. 2003)). "[Direct] evidence must not only speak directly to the issue of discriminatory intent,

4

it must also relate to the specific employment decision in question." *Cowan v. Prudential Ins. Co.*, 141 F.3d 751, 760 (7th Cir.1998). "Derogatory statements made by someone who is not involved in making the employment decision at issue are not evidence that the decision was discriminatory." *Rozskowiak*, 415 F.3d at 612.

Peterson decided to terminate Adeniji after consultation with Getchell. The record does not show that any other individual had input in the decision. Therefore, any remarks Adeniji points to as direct evidence of discrimination must be linked to one of these two individuals. For direct evidence, Adeniji cites his own deposition testimony that a single individual made comments to him about his accent and that he overheard another individual make a derogatory comment about his race. Adeniji, however, has provided no link between these remarks and the people who made the decision to terminate him. Therefore, these remarks are not direct evidence of discrimination.[2]

Adeniji also argues that the record contains adequate circumstantial evidence to support an inference of discrimination.

---

[2] In a later filed affidavit, Adeniji alleges generally that the ABBHH managerial staff made remarks to him about his accent throughout his tenure. Adeniji, however, has again failed to show a connection between these remarks and the individuals who had input in the decision to terminate him. Additionally, Adeniji's affidavit directly contradicts his deposition testimony that only one individual commented to him about his accent. *See Patterson v. Chicago Ass'n for Retarded Citizens*, 150 F.3d 719, 724 (7th Cir. 1998).

5

"To avoid summary judgment using circumstantial evidence, [Adeniji] must construct a 'convincing mosaic' that 'allows a jury to infer intentional discrimination by the decision maker.'" *Gomolka v. Quotesmith.com*, 2005 U.S. Dist. LEXIS 24204 (quoting *Troupe v. May Dep't. Stores Co.*, 20 F.3d 734, 736 (7th Cir. 1994). "[U]nder the direct method of proof, circumstantial evidence 'must point directly to a discriminatory reason for the employer's action.'" *Jordan v. City of Gary, Ind.*, 396 F.3d 825, 832 (7th Cir. 2005). Three types of circumstantial evidence have been recognized:

> The first consists of suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn . . . . Second is evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic (pregnancy, sex, race, or whatever) on which an employer is forbidden to base a difference in treatment received systematically better treatment . . . . Third is evidence that the plaintiff was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief . . . .

*Rodin*, 420 F.3d at 720-721 (quoting *Troupe*, 20 F.3d at 736).

Adeniji first argues that Peterson's investigation was inadequate to determine that he committed the offenses of which he was accused. In reviewing Peterson's decision, it is not the court's function to determine if he came to the correct decision in terminating Adeniji because, even if the defendants' reasons for termination were "mistaken, ill considered or foolish, so long as

6

[Peterson] honestly believed those reasons, pretext has not been shown." *Jordan v. Summers*, 205 F.3d 337 (7th Cir. 2000). An analysis of the record shows that ABBHH had a reasonable and honest basis for terminating Adeniji. According to the ABBHH handbook, anyone found to have sexually harassed another employee would be immediately terminated. Therefore, a finding that Adeniji sexually harassed two employees and threatened one of them was a conclusion that warranted termination. Peterson based his conclusion on the complaints of harassment and threats by Ziarko and Brown. Adeniji points to nothing in the record outside of his own denials that suggests the conduct did not occur. There is no independent basis in the record for a suggestion that Ziarko's complaint of sexual harassment was fabricated or that Brown's complaints of sexual harassment and threatening behavior were fabricated, and that Peterson would have been aware of that fabrication. Adeniji also makes the claim that non-Nigerians would have been afforded a more comprehensive investigation, but provides no evidence to support that claim.

Adeniji questions the integrity of Peterson's investigation by suggesting that Peterson made the decision to terminate him before he was even aware of Ziarko's complaint. Adeniji argues that his testimony that he received a phone call from Getchell on May 18 informing him that he was under investigation is evidence of improper termination because Peterson's affidavit states that he

7

did not receive Ziarko's complaint until the morning of May 19. Adeniji's allegation is that a conspiracy involving some combination of Ziarko, Brown, Peterson, Getchell, and Ogilvie existed at ABBHH to completely fabricate the charges against him. This is an assertion that has no independent basis in the record. No reasonable fact-finder could conclude that this type of conspiracy existed based on the record in this case which, outside of Adeniji's own self-serving testimony, does nothing to show that Adeniji did not in fact commit the alleged offenses. For the above reasons, Adeniji's wrongful termination fails under the direct method.

### B. Indirect Method

Alternatively, Adeniji may proceed under the indirect burden-shifting method to establish his wrongful termination claim. In order to proceed under the indirect method for a national origin termination claim, a plaintiff must show that 1) he is a member of a protected class; 2) he was performing his job satisfactorily; 3) he was terminated; and 4) the defendant treated similarly situated employees outside his class more favorably. *Rozskowiak*, 415 F.3d at 614. If a plaintiff establishes a *prima facie* case, the defendant must then produce evidence of a legitimate and nondiscriminatory reason for taking the adverse employment action. *Id.* If the defendant makes this showing, the burden shifts back to

the plaintiff to show that the proffered reason is pretextual. *Id.*

Adeniji has failed to identify similarly situated employees outside his class and has failed to show that ABBHH treated these employees more favorably. To constitute similarly-situated employees, the named employees must be "directly comparable to [the plaintiff] in all material respects." *Patterson v. Avery Dennison Corp,* 281 F.3d 676, 680 (7th Cir. 2002). Adeniji has only generally alleged that the entire ABBHH managerial and supervisory staff is similarly situated to him. Adeniji is not a manager or supervisor and this group of individuals is not similarly situated to him. By failing to identify similarly situated individuals, Adeniji also has failed to make the necessary showing that the similarly situated employees were treated more favorably. Adeniji has failed to meet his burden of establishing a *prima facie* case of discrimination under the indirect method. Defendant's motion for summary judgment is granted on this claim.

## II. ADEA claims

The court uses the same analytical methods used in Adeniji's Title VII claim to analyze his ADEA claim. *Cerutti v. BASF Corp.,* 349 F.3d 1055, 1061 n.4 (7th Cir. 2003). Adeniji has provided no additional evidence that would support his ADEA claim under the direct method. In support of his ADEA claim, Adeniji only offers the same arguments that he did not commit the offenses, that

Peterson's investigation was not thorough, and that the timing of his termination was suspicious. For the same reasons, Adeniji's arguments fail. Under the indirect method, Adeniji has again failed to identify any similarly situated individuals who were treated more favorably. Because Adeniji cannot show an ADEA violation under either the direct or indirect method, he also cannot show that ABBHH wilfully violated the ADEA. Accordingly, I grant defendant's motion for summary judgment on the ADEA claims.

**ENTER ORDER:**

_/s/ Elaine E. Bucklo_
_____
**Elaine E. Bucklo**
United States District Judge

Dated: January 12, 2006